AO 93C (08/18) Warrant by Telephone or Other Reliable Electronic Means

☐ Original          ☐ I



CLERK'S OFFICE
A TRUE COPY
Oct 25, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) |
| Apple iPhone in a black case previously listed under | ) |
| Milwaukee Police Department Inventory 22035928, Item 1, | ) |
| and currently listed under Federal Bureau of Investigation | ) |
| Evidence Item No. 1B1 | ) |

Case No. **22-M-580 (SCD)**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before     11-8-22          *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Stephen C. Dries, U.S. Magistrate Judge_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   10-25-22 1:15 pm

*Judge's signature*

City and state:   Milwaukee, Wisconsin

Stephen C. Dries, U.S. Magistrate Judge
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched is an Apple iPhone in a black case previously listed under Milwaukee Police Department Inventory 22035928, Item 1, and currently listed under Federal Bureau of Investigation Evidence Item No. 1B1, hereinafter the "Device." The Device is currently located at 3600 South Lake Drive, Saint Francis, Wisconsin, 53235.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

17

## ATTACHMENT B

1.    All records and information on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 924(c)(1)(A) and involving William Pope, including:

    a.   lists of customers and related identifying information;

    b.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d.   any information related to the possession, custody, or control of weapons or firearms;

    e.   any information about the existence, scope, overt acts, and identity of any co-conspirators;

    f.   any information about the possession, custody, control, and ownership of any vehicles, including a gray Dodge Charger SRT and a gray Jeep Grand Cherokee;

    g.   any information about the YouTube channel "Realstasher.50k";

    h.   any information recording Pope's identity, clothing, schedule, movements, or travel;

    i.   all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2



CLERK'S OFFICE
A TRUE COPY
Oct 25, 2022
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
an Apple iPhone in a black case previously listed under Milwaukee )
Police Department Inventory 22035928, Item 1, and currently listed )
under Federal Bureau of Investigation Evidence Item No. 1B1 )

Case No. **22-M-580 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and 846 | Manufacture, distribute, and possess with the intent to distribute a controlled |
| 18 U.S.C. § 924(c) | substance, and conspiracy to do the same; possession of a firearm in furtherance of a drug trafficking crime |

The application is based on these facts:

See the attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**JOSH EAGEN** Digitally signed by JOSH EAGEN
Date: 2022.10.25 09:21:04 -05'00'

*Applicant's signature*

Special Agent Joshua Eagen (FBI)

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____telephone_____ *(specify reliable electronic means)*.

Date: ___10-25-22___

*Judge's signature*

City and state: Milwaukee, Wisconsin

Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Joshua Eagen, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation, and have been since March 2020.  Since that time, I have gained experience in the investigation, apprehension, and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses, and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location. During my career, my investigations have included the use of various surveillance techniques and the execution of various search, seizure, and arrest warrants.  I have used data and records lawfully obtained from cellular telephones associated with targets of multiple investigation to obtain evidence of federal criminal offenses, and have conducted historical cell site analysis to locate phones of subjects in multiple investigations.

3.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is an Apple iPhone in a black case previously listed under Milwaukee Police Department Inventory 22035928, Item 1, and currently listed under Federal Bureau of Investigation Evidence Item No. 1B1, hereinafter the "Device." The Device is

currently located at the Federal Bureau of Investigation, located at 3600 South Lake Drive, Saint Francis, Wisconsin 53235.

5.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.      The United States, including the Federal Bureau of Investigation, is conducting a criminal investigation of a drug trafficking conspiracy led by Rayvon D. Edwards regarding possible violations of 21 U.S.C. §§ 841(a)(1) and 846.

7.      The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with confidential sources and sources of information; information from other law enforcement officers; documentary evidence; telephone toll data; and physical surveillance.

8.      The Milwaukee Police Department opened an investigation into Rayvon D. Edwards in 2019. At the time, Edwards was part of an organization called YPN. During the course of the investigation, the Milwaukee Police Department conducted a controlled buy into Edwards using a Confidential Human Source for 57.6 grams of cocaine and 25.6 grams of heroin.

9.      In June 2021, the Milwaukee Police Department identified multiple residences associated with Rayvon Edwards including one apartment in the downtown district of Milwaukee, which Edwards used as a cook house for narcotics processing. Another confidential informant, handled by the Milwaukee Police Department, identified Quantie C. McDonald as a person who transported drugs for Edwards including the cook house.

2

10.     On June 9, 2021, the Milwaukee Police Department responded to an overdose at the cook house in downtown Milwaukee, where responding officers discovered McDonald deceased in the apartment. Edwards was on scene and was the 911 caller who reported the death. The search of the apartment produced Pyrex containers containing mixes of white powder residue on them. The Wisconsin Regional Crime Laboratory identified fentanyl as a part of the mixture.

11.     Case agents have since received information concerning the illegal drug trafficking activities of Rayvon D. Edwards from a confidential source (hereinafter "CHS #1"). CHS #1 has been providing reliable information to the Federal Bureau of Investigation since March 2022. Specifically, CHS #1 provided information that directly led to a search warrant which led to the recovery of three firearms and a distribution-level quantity of marijuana and crack cocaine.

12.     CHS #1 has provided information about the membership, structure, and customs of Edwards's drug trafficking organization. CHS #1 has positively identified EDWARDS as the leader of that drug trafficking conspiracy through a Milwaukee Police Department booking photo. Further, CHS #1 identified Daje M. Hunter through a Wisconsin Department of Transportation photograph as Edwards's girlfriend and an active participant in the drug trafficking organization. CHS #1's information concerning Edwards's drug trafficking organization has been corroborated by other investigations into Edwards and his associates, information obtained from various public databases including Experian, phone data, court records, physical surveillance, and other investigative information. CHS #1's information has never been found to be false or misleading.

3

13.     Case agents know that CHS #1 has worked as a source for other law enforcement agencies. Case agents have discussed the reliability of CHS #1 with the handling agents and officers from each of the other law enforcement agencies. Through these discussions, case agents have learned of no instances where the information provided by CHS #1 to the other law enforcement officers has been false or misleading. The information provided by CHS #1 is consistent with evidence obtained elsewhere in this investigation, and substantial parts of CHS #1's information have been corroborated through independent investigation, including information obtained from various public databases, physical surveillance, and electronic surveillance. CHS #1 has a criminal history that includes theft, property damage, trespass, drug trafficking, and vehicle and traffic violations. CHS #1 is receiving consideration in connection with a pending drug case from the Milwaukee County District Attorney's Office for his/her cooperation with law enforcement. CHS #1 was recently arrested for possession of marijuana, possession of drug paraphernalia, and bail jumping and released on bond. For these reasons, case agents consider CHS #1 to be reliable.

14.     CHS #1 informed investigators that Edwards picks up two to four kilograms of cocaine and heroin a week. CHS #1 informed investigators that he/she typically communicates with Edwards via FaceTime, contacting him on phone number 414-491-2298. CHS stated they also speak via text and traditional voice call, but usually via FaceTime. CHS #1 said that Edwards communicates with text, traditional call, and FaceTime. However, the traditional phone call conversations are generally short with limited information. CHS #1 said that when Edwards engages in drug transactions with drug users that he will sell the cocaine or heroin for $50 per gram and will occasionally sell the cocaine and heroin for $20 per gram in an attempt to acquire more consumers.

4

15.     On multiple occasions in March and April 2022, CHS #1 provided information about Rayvon Edwards's communication. On March 23, 2022, CHS #1 provided case agents with two phone numbers that Edwards uses for narcotics trafficking. CHS #1 identified 414-491-2298 as Edwards's high-level drug line, the phone number that he uses to contact sources of supply. CHS #1 identified 414-899-7597 as Edwards's low-level drug line, the phone number that he uses to distribute controlled substances. Case agents issued administrative subpoenas for subscriber and telephone toll data for both call numbers, and an analysis of the data showed many common call numbers with which both the high-level drug line and low-level drug line were in frequent contact, consistent with Edwards controlling both call numbers.

16.     CHS #1 informed case agents that Edwards purchased an auto shop and provided an address of 7210 West Capitol Drive, Milwaukee, Wisconsin. CHS #1 said that Edwards had purchased the auto shop, was refurbishing the auto shop to operate as a legitimate source of income, but was paying for the improvements with proceeds of drug trafficking. A Currency Transaction Report (CTR) #31000212039542 associated with Daje M. Hunter, Edwards's girlfriend, dated March 16, 2022 listed 414-446-0856 as Hunter's contact phone number. A follow-up search of Experian phone data identified 414-446-0856 as being associated with Daje M. Hunter. Utility checks conducted in April 2022 on 7210 West Capitol Drive, Milwaukee, Wisconsin listed Daje M. Hunter as the responsible party with a phone number of 414-446-0856. In mid-April 2022, case agents contacted the Wisconsin Department of Financial Institutions via an open records request regarding any corporations associated with Rayvon D. Edwards or Daje M. Hunter. Edwards was listed as the registered agent of Lavish Tuning Auto Repair LLC, located at 7210 West Capitol Drive, Milwaukee, Wisconsin.

5

**WILLIAM POPE**

17.     CHS #1 also provided information regarding a drug trafficker known to CHS #1 as "Fifty," later identified as William H. Pope (DOB: 02/28/2000). CHS #1 reported that in March 2022 Pope was involved in a vehicle pursuit with the Milwaukee Police Department in a black Jeep SRT.  Case agents are aware that Pope was arrested in a vehicle pursuit driving a black Jeep SRT.  Court records show that Pope was charged for this crime in Milwaukee County Case Number 2022CF001012 with one count of fleeing or eluding an officer causing bodily harm or property damage, in violation of Wisconsin Statute 346.04(3), three counts of first-degree recklessly endangering safety, in violation of Wisconsin Statute 941.30(1), and driving or operating a vehicle without owner's consent, in violation of Wisconsin Statute 943.23(3), and possession with intent to deliver cocaine with use of a dangerous weapon, in violation of Wisconsin Statutes 961.41(1m)(cm)2 and 939.63(1)(b). On March 16, 2022, he appeared in Milwaukee County Circuit Court and was turned over to Justice Point supervision and ordered not to possess controlled substances, dangerous weapons, or firearms.

18.     CHS #1 informed investigators that Pope is a mid-level distributor in the Edwards's drug trafficking organization. CHS #1 informed case agents that Pope receives a couple of ounces of narcotics a week from Edwards and that Pope is known to possess firearms while drug trafficking. CHS #1 identified Pope as "Fifty" in a Milwaukee Police Department booking photo.

19.     Pope was stopped by law enforcement on March 11, 2022 with 13 grams of cocaine/fentanyl and $6,632 cash in his pocket. CHS #1 was aware that either Edwards or a person associated with Edwards posted $10,000 bail for Pope. CHS #1 later informed investigators that Daje Hunter withdrew $10,000 for Pope's bail on March 16, 2022. Milwaukee

6

County Jail and bail records show that "Latanya Mays" paid $10,000 for William Pope's bail on March 16, 2022.

20.     In early-April 2022, CHS #1 informed case agents that CHS #1 observed Hunter driving Edwards to a location for a drug transaction with Pope. Edwards delivered two ounces of cocaine for approximately $2,000. Furthermore, CHS #1 informed case agents that Edwards typically has Hunter drive him home after narcotics transactions to avoid law enforcement scrutiny.

21.     During May 2022, CHS #1 provided information that CHS #1 had observed Pope purchase 20 grams of heroin and 3 ounces of cocaine from Edwards for $45 a gram for heroin and $975 an ounce for the cocaine, and reported that Pope would purchase that much from Edwards every other day. CHS #1 stated that one of these drug transactions occurred at the auto shop located at 7210 West Capitol Drive, Milwaukee, Wisconsin.

22.     On May 15, 2022, Edwards was arrested in Chicago, Illinois with 142 grams of crack cocaine and two digital scales. While in custody, Edwards called Daje Hunter at 414-446-0856.

23.     On June 1, 2022, investigators conducted static electronic video surveillance in the area of 7210 West Capitol Drive, Milwaukee, Wisconsin. During the course of this surveillance, investigators observed a subject believed to be Pope exit a gray Dodge Charger SRT which was parked in the parking lot. Investigators observed Pope exit the vehicle with a black firearm in his waistband and begin walking around the lot before returning to the Charger. Pope reached into the vehicle before removing his hand and closing the door after which the firearm was no longer visible. Investigators contacted uniformed officers of the Milwaukee Police Department who were in a marked police vehicle and requested that they attempt a traffic

7

stop if Pope were to leave in the Charger. Shortly thereafter, investigators observed Pope enter the driver seat of the Charger and exit the parking lot. At approximately 6:04 p.m., the uniformed officers attempted to conduct a traffic stop of the Dodge Charger, but the vehicle fled from them once the officers activated their lights and siren. A pursuit of the vehicle was not initiated at that time.

24.     On July 8, 2022, case agents conducted surveillance on Edwards using the location information for Edwards's prior phone number 414-491-2298. While the location information showed 414-491-2298 in the vicinity of 7210 West Capitol Drive, Milwaukee, Wisconsin, case agents observed Pope arrive at the same location in a gray Dodge Charger. Case agents observed Pope and Edwards both enter 7210 West Capitol Drive, Milwaukee, Wisconsin and then exit a short time later. Case agents observed Pope enter the driver seat of the Charger, travel one block away, and park in the 4000 block of North 72nd Street, Milwaukee, Wisconsin near a red Saturn Vue. While parked, a white female exited the Saturn and approached the driver window of Pope's Charger. The white female engaged in what appeared to be a hand-to-hand transaction with Pope before returning to her vehicle. A traffic stop was later conducted on the Saturn Vue, and the female admitted to purchasing cocaine and heroin from a black male matching Pope's description in a gray Dodge Charger. Law enforcement officers recovered heroin from the Saturn Vue, and the female said that she consumed the cocaine.

25.     Case agents were made aware of a vehicle pursuit which occurred on July 12, 2022, during which MPD Officers pursued a 2015 Hyundai Sonata driven by Jerold Lee-Brown (DOB: 02/09/1995). At the end of the vehicle pursuit, Lee-Brown exited the Sonata and ran to a waiting gray Dodge Charger and entered the back passenger seat. The Dodge Charger then fled. Case agent review of the squad camera video and reports indicated that the pursuit began at

8

approximately 7:38 p.m. from the area of 2111 South 14th Street, Milwaukee, Wisconsin. At approximately 7:57 p.m., the Hyundai Sonata drove through a vacant field near North 28th Street and North 29th Street towards West St. Paul Avenue, where a gray Dodge Charger with black rims was waiting facing eastbound towards the freeway entrance. As the Sonata drove through the field, Lee-Brown exited the driver door and began to run towards the Charger. The rear driver side door of the Charger was opened from the inside by an occupant of the vehicle. Lee-Brown entered, and the Charger subsequently fled onto the freeway, eluding the police. Case agents recognized the Dodge as a similar body style, color, and color rims as the vehicle known to be operated by Pope. The police officers reported that the Charger had a possible plate of ANK-3228 but had a license plate cover over the plate. This plate number is similar to the plate on Pope's Charger which is AKX-3238. A review of the electronic video surveillance at Edwards's auto shop located at 7210 West Capitol Drive, Milwaukee, Wisconsin captured Edwards, shortly after this pursuit, partially opening a garage bay door, which a gray Dodge Charger, matching the appearance of the one from the fleeing incident, then entered. The garage bay door was then immediately closed behind the vehicle. A subject with a similar build and clothing appearance as Lee-Brown exited the shop along with subjects matching the physical characteristics of Pope and Edwards.

26.     A review of the location information for Edwards's prior phone number 414-491-2298 showed that his phone was in the vicinity of the auto shop at 7210 West Capitol Drive, Milwaukee, Wisconsin at the time of the pursuit, and a review of the pen register data revealed that 414-750-9792 called Edwards at approximately 8:01 p.m. for approximately 36 seconds just prior to an unknown male running to the shop and Edwards returning to the shop. A second call

9

with the same number began at 8:07:39 p.m. and lasted 1 minute 49 seconds. This call was terminated within 3 seconds of the Dodge Charger pulling into the garage bay.

**POSSESSION OF DEVICE**

27.     The Device is currently in the lawful possession of the Federal Bureau of Investigation.  It came into the Federal Bureau of Investigation's possession in the following way:

28.     During the course of the investigation, which included physical surveillance and automated license plate readers, investigators became aware of a gray Jeep Grand Cherokee SRT which had been involved in multiple fleeing incidents from the Milwaukee Police Department. Pope was the suspected operator of that gray Jeep Grand Cherokee SRT. The Jeep had been identified as bearing Wisconsin license plate AKJ-2261 and a Car Planet Dealership placard. The Jeep also had heavy window tint on all windows including the front windshield.

29.     On September 12, 2022, Pope posted a video to the YouTube channel "Realstasher.50k" with the title "Realstasher 50K 'Perfect Timing' (Official Music Video)." During the music video, Pope was observed rapping in the video while standing near the previously described gray Jeep. The last four digits of the license plate can be seen in the video as "2261." During the course of that video, Pope can be seen holding several cell phones.

30.     On September 24, 2022, investigators located the gray Jeep with the Car Planet placard parked at the BP gas station located at 2023 South Kinnickinnic Avenue, Milwaukee, Wisconsin.  During the course of the surveillance, Pope exited the vehicle to remove trash and vacuum out the vehicle before he reentered the driver seat and left the gas station.

31.     On September 29, 2022 at approximately 1:00 p.m., investigators again observed the gray Jeep with the Car Planet placard parked at the gas station located at 200 North 35th

10

Street, Milwaukee, Wisconsin. During the course of the surveillance, an unknown white male approached the Jeep and engaged in what appeared to be a hand-to-hand drug transaction with the driver of the Jeep. The Jeep proceeded to leave the gas station and travel to the 500 block of North 41st Street, Milwaukee, Wisconsin. Law enforcement officers in an unmarked Milwaukee Police Department vehicle activated their lights and siren and attempted a traffic stop of the Jeep for the suspected mobile drug trafficking and registration violation, but the vehicle accelerated away at a high rate of speed to elude police. A vehicle pursuit was initiated but terminated shortly thereafter.

32.     Investigators later approached an attendant of the gas station at 200 North 35th Street, Milwaukee, Wisconsin where the gray Jeep with the Car Planet placard was observed. The attendant provided security video footage depicting approximately 12:50 p.m. to 1:00 p.m. In the surveillance video, Pope was captured exiting the gray Jeep as well as inside the gas station wearing blue jeans and a black coat or sweatshirt with multi-colored designs.

33.     At approximately 1:12 p.m. on the same day, a gray Jeep Grand Cherokee SRT pulled up directly behind a West Allis Police Department Detective who was parked in the 3500 block of North 56th Street in an undercover police vehicle conducting an unrelated investigation. The vehicle had been reported stolen from Rosemont, Illinois on June 25, 2022. The sole occupant and driver of the vehicle exited the vehicle wearing a black hooded sweatshirt with a multi-colored design and light blue jeans. The detective observed him hold his waistband as if he was holding a firearm and run eastbound through the yards. The detective contacted the Milwaukee dispatcher to inform them of his observations, which were subsequently passed to the case agents. Case agents then responded to the location and observed the gray Jeep which was pursued earlier that day parked at 3531 North 56th Street. Case agents approached to clear the

11

vehicle, and opened the unlocked front and rear passenger doors due to their inability to see through the vehicle's heavy tint. There were no occupants found in the vehicle which was found to be stolen after a query was conducted using the vehicle identification number (VIN).

34.     Investigators found and recovered an Apple iPhone—the Device—as well as multiple plastic bags containing suspected controlled substances. Field tests of those substances yielded the following results: 9.4 grams of an off-white rock-like substance that tested positive for cocaine was in a knotted clear plastic sandwich bag in a gray drawstring bag on the passenger seat; 20.6 grams of a white crystal substance that tested positive for methamphetamine was in a knotted clear plastic sandwich bag inside an additional clear plastic bag inside the gray drawstring bag; 72.6 grams of a pink rock-like substance that tested positive for methamphetamine and fentanyl was in in a knotted clear plastic bag in the gray drawstring bag. The Device was in rear passenger compartment of the vehicle. The keys were not in the vehicle, but the vehicle was unlocked.

35.     Therefore, while the Federal Bureau of Investigation might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

36.     The Device is currently in storage at the Federal Bureau of Investigation, located at 3600 South Lake Drive, Saint Francis, Wisconsin 53235.  In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Federal Bureau of Investigation.

## **TECHNICAL TERMS**

37.     Based on my training and experience, I use the following technical terms to convey the following meanings:

 a. Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

 b. Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

 c. Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

 d. GPS: A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved

13

in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

38. Based on my training, experience, and research, I know that the Device has capabilities which include but are not necessarily limited to acting as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience,

14

examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

39.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

40.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

15

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to facilitate or further the purchase or distribution of narcotics, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

41. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

42. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

<u>CONCLUSION</u>

43. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

16

## **ATTACHMENT A**

The property to be searched is an Apple iPhone in a black case previously listed under Milwaukee Police Department Inventory 22035928, Item 1, and currently listed under Federal Bureau of Investigation Evidence Item No. 1B1, hereinafter the "Device." The Device is currently located at 3600 South Lake Drive, Saint Francis, Wisconsin, 53235.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.     All records and information on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a)(1) and 846 and 18 U.S.C. § 924(c)(1)(A) and involving William Pope, including:

    a.  lists of customers and related identifying information;

    b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d.  any information related to the possession, custody, or control of weapons or firearms;

    e.  any information about the existence, scope, overt acts, and identity of any co-conspirators;

    f.  any information about the possession, custody, control, and ownership of any vehicles, including a gray Dodge Charger SRT and a gray Jeep Grand Cherokee;

    g.  any information about the YouTube channel "Realstasher.50k";

    h.  any information recording Pope's identity, clothing, schedule, movements, or travel;

    i.  all bank records, checks, credit card bills, account information, and other financial records.

2.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.